**Todd M. ROBERTS, Plaintiff,**

v.

**Dr. Mahmood KARIMI and Johanna Karimi, Defendants.**

**No. 97–CV–4756(ADS).**

United States District Court,
E.D. New York.

June 4, 2002.

Dickstein Shapiro Morin & Oshinsky LLP, New York, NY, by Adam Ziffer, Of Counsel, for the Plaintiff.

Quirk and Bakalor, P.C., New York, NY, by Timothy J. Keane, Esq., Of Counsel, for the Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This action arises out of a claim by the plaintiff Todd M. Roberts ("Roberts" or the "plaintiff") against the defendants Dr. Mahmood Karimi ("M. Karimi") and Johanna Karimi ("J. Karimi") (collectively, the "defendants") alleging that the defendants breached a contract to sell their home to him. Also, the plaintiff asserts a claim for promissory estoppel on the ground that he detrimentally relied upon the defendants' promise to sell their home to him. Presently before the Court is a motion for summary judgment by the defendants to dismiss the claim for promissory estoppel.

## I. BACKGROUND

### A. The Facts

The following facts are not disputed. In the Spring of 1997, the plaintiff contacted Deborah Foglia ("Foglia"), a real estate agent employed by the defendants, to set up a tour of the defendants' vacation home at 79 Dune Road in East Quogue, New York. After a tour, the plaintiff negotiated to purchase the home through Foglia as intermediary. The plaintiff never spoke with the defendants.

On or about May 27, 1997, Foglia prepared a memorandum of sale (the "Memorandum") which reflected, among other things, that the home was sold for $610,000, subject to some minor conditions. In particular, the Memorandum contained the names and addresses of the plaintiff, the defendants and their attorneys; the address of the property; the sale price; a closing to be held "ASAP"; and a listing of the conditions of the sale as "home inspection-termite, owner will hold $200,000 mortgage for 5 years, rental will be prorated at closing." At the bottom of the Memorandum, Foglia signed her name under the line marked "Selling Agent". The defendants never signed the Memorandum.

Shortly thereafter, M. Karimi described the above sale as follows in a note to his lawyer:

Attention Mr. Munzel!

Please Note,

The house is sold *as is* and as is rented.

Immediately after May 27, 1997, in order to secure a tax benefit, the plaintiff designated the home at 79 Dune Road as replacement "like-kind" property under the Internal Revenue Code (the "IRC"). In connection with this designation, the plaintiff transferred his interest in an apartment on May 29, 1997. At no time on or before May 27, 1997 had any person informed the defendants that the plaintiff intended to designate 79 Dune Road as a replacement "like-kind" property.

On June 17, 1997, the defendants' attorney sent the plaintiff's attorney a standard-form real estate contract including a rider specifying that the purchaser "agrees to take the premises as is," and excised certain sellers' representations in the contract, namely, representations that all mechanical and electrical systems including heating, plumbing, and air conditioning would be in working order on the date of the closing.

On June 25, 1997, the plaintiff's attorney sent the defendants' attorney a letter suggesting certain changes to the standard-form contract which included replacing the phrase "to take the premises as is" with "to take the premises as is subject to the provisions of ¶ 16(f) of the standard form." In addition, the plaintiff sought from the defendants a six month warranty after the closing covering the plumbing and heating systems.

On or about July 15, 1997, the plaintiff's attorney sent the defendants' attorney an executed contract for the proposed sale of 79 Dune Road and a check for $60,000 as a security deposit. The signed contract contained a sellers' warranty that all systems were in working order. On July 16, 1997, the defendants' attorney sent the signed contract to the defendants requesting that they sign it. The defendants' attorney also deposited the $60,000 check in an escrow account.

On July 18, 1997, the plaintiff sold a second apartment and designated 79 Dune Road as the substitute property for a "like-kind exchange" under the IRC. The defendants never executed the contract and refused to proceed with the scheduled closing on July 22, 1997.

## B. The Procedural History

On August 15, 1997, the plaintiff filed the complaint in this action. The plaintiff sought to recover damages and specific performance based on two causes of action: (1) breach of contract; and (2) promissory estoppel. The parties cross-moved for summary judgment. In particular, the plaintiff argued that an enforceable contract to sell the property existed as a matter of law, while the defendants contended that the alleged contract was barred by the Statute of Frauds. The Court reserved decision on the motions.

In December of 1999, a jury trial was conducted. After the conclusion of the plaintiff's case, the Court denied the defendants' motion stating that the requirement of a sufficient writing was satisfied by the combined weight of three documents. *See Roberts v. Karimi*, 79 F.Supp.2d 174, 178 (E.D.N.Y.1999), *rev'd on other grounds*, 251 F.3d 404, 408 (2d Cir.2001). After the completion of the evidence, the case was submitted to the jury. *Id.* at 176.

Upon consent of both parties, the special verdict form asked the jury only whether there was a "meeting of the minds", namely an agreement on all of the material terms of the contract on May 27, 1997. *Id.* The special verdict form did not ask the jury whether the plaintiff performed what he was obligated to do under the terms of the contract and was ready, willing and able to do all that the contract required. *Id.* Finally, the special verdict form instructed the jury not to address the claim

for promissory estoppel if they find that a valid contract existed between the parties.

The jury found that a valid contract existed and returned a verdict against the defendants in the amount of $100,000. *Id.* The jury did not address the claim for promissory estoppel. Both parties moved for post-trial relief. The defendants argued that they were entitled to judgment as a matter of law on the ground that no reasonable juror could have found a meeting of the minds. *Id.* at 179. The Court denied the defendants' motion stating that sufficient evidence existed to establish that the parties reached an agreement to sell the home on an "as is" basis on May 27, 1997. *Id.*

The Court also denied the plaintiff's post-trial application for specific performance because the plaintiff failed to prove that he substantially performed or that he was ready, willing and able to perform his obligations under the May 27, 1997 agreement. *Id.* at 180–81. In particular, the court found that "the plaintiff's last communication with the defendants a few days prior to closing included a proposed contract and confirming letter that requested that the plumbing and heating system be repaired by the defendants and warranted for six months after the conveyance of the sale." *Id.* at 180.

The Second Circuit reversed the judgment on the ground that the Court's finding of fact that the plaintiff did not prove that he was ready, willing and able to perform his obligations under the May 27, 1997 agreement negated an essential element of the breach of contact claim. *Roberts v. Karimi,* 251 F.3d 404, 407–08 (2d Cir.2001). The Second Circuit remanded the case to this Court for further proceeding on the remaining claim of promissory estoppel. *Id.* at 408.

The defendants now move for summary judgment on the promissory estoppel claim on the ground that there are no genuine issues of material fact and they are entitled to judgment as a matter of law.

## II. DISCUSSION

### A. The Standard for Summary Judgment

Summary judgment must "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the party moving for summary judgment to establish the absence of any genuine issues of material fact, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), and any ambiguities must be resolved in favor of the non-movant, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986).

"When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (internal quotation marks and citations omitted). Lastly, the existence of disputed facts that are not material to the issues at hand may not defeat summary judgment. *Id.*

"As to materiality, the substantive law will identify which facts are material." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment." *Id.* A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.*, 18 F.3d 172, 176 (2d Cir. 1994); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991).

"[T]he trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to decid[e] them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B. The Promissory Estoppel Claim

■ It is undisputed that New York law governs the promissory estoppel claim. Under New York Law, the elements of a claim for promissory estoppel are (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise was made; and (3) an injury to the party to whom the promise was made by reason of the reliance. *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir.1995); *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 78 (2d Cir.1984).

■ When a claim for promissory estoppel provides relief to a party where a contract is rendered unenforceable by operation of the Statute of Frauds, the party must prove that her injury was "unconscionable". *See Cyberchron*, 47 F.3d at 44 (illustrating that an unconscionable injury is required when promissory estoppel is asserted to contravene the effect of the Statute of Frauds); *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 825–26 (2d Cir.1994) (stating that an unconscionable injury is required for a claim of promissory estoppel to negate the Statute of Frauds).

■ In this case, the Statute of Frauds does not bar the enforcement of the contract. *See Roberts*, 79 F.Supp.2d at 178–79 (finding that the note and affidavit of the defendant, the memorandum of sale, the affirmation of one of the defendant's attorneys combine to form a "writing" sufficient to meet all of the requirements of the Statute of Frauds). As such, the plaintiff does not have to prove that his injury was "unconscionable".

### 1. A Clear and Unambiguous Promise

■ The Court finds that genuine issues of material fact exist with respect to whether the Memorandum of May 27, 1997 was a clear and unambiguous promise. In particular, the Memorandum contained the names and addresses of the parties and their attorneys, the address of the property, the sale price, a closing to be held "ASAP" and minor conditions on the sale. Thereafter, the defendants sent the plaintiff a real estate contract and a closing date of July 22, 1997 was set. The issue of whether the terms in the Memorandum constitute a clear and unambiguous promise is for a jury to decide, not this Court. *See Gallo*, 22 F.3d at 1224 (stating that at the summary judgment stage the district court's duty is to determine whether there are genuine issues of material fact to be tried, not to decide these issues).

### 2. Reasonable and Foreseeable Reliance on the Promise

The Court finds that genuine issues of material fact exist with respect to whether the plaintiff reasonably relied upon the

Memorandum of May 27, 1997 that he would be entitled to purchase the home "as is". It is undisputed that after May 27, 1997, the plaintiff designated 79 Dune Road as replacement "like-kind" property, transferred his interest in an apartment and sold a second apartment. The plaintiff took these steps to secure a tax benefit under the IRC. The issue of whether the plaintiff's actions were in reasonable reliance upon the Memorandum is for a jury to decide, not this Court.

In addition, it is foreseeable that when a party purchases a home that she or he will take steps in anticipation of tax consequences associated with the purchase. For example, it is foreseeable that a buyer will sell other properties to purchase the home. As such, the issue of whether it was foreseeable for the plaintiff to designate 79 Dune Road as replacement "like-kind" property, transfer his interest in an apartment and sell another apartment is for the jury to decide.

### 3. An Injury based upon the Reliance

As a result of designating 79 Dune Road as the substitute property for a "likekind" exchange under the IRC, the plaintiff allegedly lost a tax benefit of $55,000. In addition, because the sale of the property did not take place, the plaintiff alleges that he had to store furniture for a thirty month period, which cost him $6,000. Finally, the plaintiff alleges that he ceased his search for "like-kind" investment property depriving him of rental income and appreciation in connection with replacement property. The defendants fail to show that there are no genuine issues of material fact as to this element and that they are entitled to judgment as a matter of law.

Accordingly, the motion for summary judgment is denied.

### C. The Right to a Jury Trial

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. To determine whether a party is entitled to a jury trial under the Seventh Amendment for a claim of promissory estoppel, a district court must apply a two part historical test: "first whether the action would have been deemed legal or equitable in 18th century England, and second whether the remedy sought is legal or equitable in nature." *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 823 (2d Cir.1994). A district court "must balance the two, giving greater weight to the latter." *Id.*

The "doctrine of 'promissory estoppel' eludes classification as either entirely legal or entirely equitable, and the historical evidence is equivocal." *Merex A.G.*, 29 F.3d at 825. "It is clear, however, that both law and equity exert gravitational pulls on the doctrine, and its application in any particular case depends on the context in which it appears." *Id.* Where a plaintiff "uses promissory estoppel to avoid a draconian application of the Statute of Frauds, the pull of equity becomes irresistible." *Id.* In this case, the Court determined that the Statute of Frauds does not bar the enforcement of the contract. *See Roberts*, 79 F.Supp.2d at 178–79. Accordingly, the plaintiff is not pursuing the promissory estoppel cause of action to avoid the Statute of Frauds and thus the claim is more legal, than equitable.

As to the nature of the remedy, the plaintiff seeks to recover a lost tax benefit of $55,000, fees for storing furniture of $6,000 and an unspecified loss of rental income and appreciation in connection with replacement property when he ceased his search for "like-kind" investment property. The Court finds that the remedy sought is

more legal, than equitable. *See Merex A.G.*, 29 F.3d at 825 ("A claim for money damages … constitutes legal relief, for such relief was the traditional form of relief offered in the courts of law.") (internal quotation marks and citations omitted). Accordingly, the Court concludes that the plaintiff's claim for promissory estoppel is legal in nature and thus the plaintiff is entitled to a trial by jury.

It should also be noted that the defendants raise the argument that the plaintiff is not entitled to a jury trial on the claim for promissory estoppel for the first time at this stage of the litigation. The defendants did not raise this argument during the first trial and did not object to the Court presenting this claim to the jury.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the motion for summary judgment dismissing the claim for promissory estoppel is **DENIED;** and it is further

**ORDERED,** that the plaintiff is entitled to a trial by jury on the claim for promissory estoppel; and it is further

**ORDERED,** that the parties are directed appear before this Court to select a jury on July 8, 2002 at 9 a.m.

**SO ORDERED.**